Estate of Ray Blauner, Deceased, Sidney H. Blauner, Executor v. Commissioner.
Estate of Blauner v. Commissioner
Docket No. 78947.
United States Tax Court
T.C. Memo 1961-245; 1961 Tax Ct. Memo LEXIS 106; 20 T.C.M. (CCH) 1279; T.C.M. (RIA) 61245; August 30, 1961
*106 Sheldon V. Ekman, Esq., 125 Park Ave., New York, N. Y., for the petitioner. Joseph Wilkes, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax for the calendar year 1950 in the amount of $5,851.07. The sole issue is whether the redemption in 1950 by a corporation called Blauner's of 690 shares of preferred stock held by the petitioner was essentially equivalent to the distribution of a taxable dividend. Findings of Fact Some of the facts were stipulated and, as stipulated, are incorporated herein by this reference. Petitioner, the Estate of Ray Blauner, filed its United States Fiduciary Income Tax Return for the calendar year 1950 with the collector of internal revenue for the third district of New York. Ray Blauner died on April 18, 1943, and letters testamentary were issued by the Surrogate's Court for the County and State of New York on May 12, 1943, to her husband, Harry Blauner, and her son, Sidney H. Blauner, as executors. Harry Blauner died on June 25, 1949, and no successor executor has been appointed in his place. Sidney H. Blauner is accordingly the sole surviving executor. At the date of Ray *107 Blauner's death, her estate consisted of cash in the amount of $5,593.14, personal effects, clothing, and jewelry of the value of $2,225, and 130 shares of no par common stock of Sheila Corporation. The personal effects, clothing, and jewelry were distributed to Lulu Joseph, decedent's daughter. Under decedent's will each of her sons, Sidney, Irving, and Leon Blauner, became entitled to one-fifth of the remaining assets and her daughter, Lulu Joseph, to two-fifths. From April 18, 1943, until December 27, 1948, the petitioner owned the foregoing 130 shares of the common stock of Sheila Corporation, a corporation organized in 1927 under the laws of the State of Delaware. On December 15, 1948, Sheila Corporation (hereinafter referred to as Sheila) owned 197,418 shares of the 243,873 total outstanding shares of common stock of Blauner's, a corporation organized in 1911 under the laws of the Commonwealth of Pennsylvania, and owned no preferred stock of Blauner's, which at that time had 9,528 shares of $3 cumulative preferred stock outstanding. The common stock of Blauner's has been listed and traded on the American Stock Exchange (formerly known as the New York Curb Exchange) since 1928. *108 On December 15, 1948, all of the outstanding 1,000 shares of common stock of Sheila were beneficially owned by members of the Blauner family. Some but not all of the stockholders of Sheila also owned stock in Blauner's, and certain members of the Blauner family owned stock only in Blauner's but did not own stock in Sheila. In addition, there were other stockholders of Blauner's who were not members of the Blauner family. At December 15, 1948, the stockholders of Sheila and Blauner's and their respective holdings were as follows: Blauner's
Sheila
$3 Cumulative
Common
Preferred
Common
Stockholder
Stock
Stock
Stock
Harry Blauner and Sidney Blauner, Executors
under the Will of Ray Blauner, Deceased
(Peti-
tioner)
130
Sidney H. Blauner
120
6
1,250
Lillian Blauner
120
20
222
Irving Blauner
133
34
Frances Blauner
124
Leon Blauner
134
36
1,234
Phyllis Blauner
134
20
86
Lulu N. Joseph, Irving Blauner and Leon
Blauner,
Executors under the Will of Morris Joseph,
Deceased
7
Lulu N. Joseph
7
10
10
Harry Blauner
52
700
Sally Weitz
11
10
38
Justin Blauner
14
10
587
Allan Blauner
14
10
212
Richard Blauner
10
50
Sidney Blauner, Irving Blauner and Leon
Blauner,
as Trustees under Indenture dated April 23,
1936
between Lulu N. Joseph and said Trustees
890
2,128
Helene Carol Blauner
126
Myles L. Blauner
25
Jerry Joseph
66
Victor Joseph
22
Total Blauner Family
1,000
1,022
6,790
Sheila Corporation
197,418
Other Non-Related Stockholders
8,506
39,265
Total Outstanding Shares
1,000
9,528
243,473
*109 Harry and Ray Blauner were the parents of Sidney H., Irving and Leon Blauner and of Lulu N. Joseph. Sidney H. Blauner and his wife, Lillian, are the parents of Justin and Allan Blauner. Marcia T. Blauner is the wife of Justin Blauner. Irving Blauner and his wife, Frances, are the parents of Sally Weitz, who is the mother of John Robert Weitz and Karen Weitz. Leon Blauner and his wife, Phyllis, are the parents of Richard, Myles L., and Helene Carol Blauner. Morris and Lulu N. Joseph were the parents of Victor and Jerry Joseph. Morris Joseph died on June 4, 1947, and Lulu N. Joseph died on April 25, 1955. Blauner's is engaged in the retail ladies' apparel business and in 1948 operated under its own name a store located at 9th and Market Streets, Philadelphia, Pennsylvania. Blauner's also had a wholly-owned subsidiary, Wilbur-Rogers, Inc., which through its subsidiaries operated a chain of 25 women's and misses' ready-to-wear stores in 1948. The number of Wilbur-Rogers stores increased to approximately 56 by 1954. The largest store in the Wilbur-Rogers chain in 1948 was located at 925 Market Street, Philadelphia, Pennsylvania, and had been continuously operated as a Wilbur-Rogers store *110 since January 1937 by the Wilbur-Rogers Philadelphia Corporation and its predecessors. In 1948 this store was the largest Wilbur-Rogers unit in respect of volume of business, profits, and size of store. Its sales for the fiscal year ended January 31, 1948, were approximately $2,250,000, constituting in excess of 17.5 percent of the total sales of the entire Wilbur-Rogers chain. The premises at 925 Market Street, Philadelphia, Pennsylvania, were owned by Rogers Realty Company, a wholly-owned subsidiary of Sheila. These premises were leased to Wilbur-Rogers for a period of ten years from January 4, 1937, at a rental of $66,000 per annum and in September 1941 the term was extended to January 3, 1952, at the same rental. The original Wilbur-Rogers lease of the premises was submitted to the holders of common stock of Blauner's for approval. This action was taken upon the recommendation of Blauner's attorneys because of the duality of interest of the officers of Blauner's who were also officers and shareholders of Sheila. The officers of Sheila set the rental to be received by Rogers Realty Company at what they considered to be a low figure because of their position also as officers of Blauner's *111 and because they wanted to avoid criticism. The usual method by which the rentals for other Wilbur-Rogers stores were fixed was to provide for a minimum rental and a percentage of sales, which in 1948 was customarily five or six percent. Applying this formula to the Wilbur-Rogers Philadelphia store, the fair rental for the premises would have been approximately $115,000 per annum. The officers of Blauner's in 1948 were Sidney H. Blauner, president; Irving Blauner, vice-president; Leon Blauner, secretary. The officers of Sheila in 1948 were Leon Blauner, president; Irving Blauner, vice-president; Sidney H. Blauner, secretary. During 1948 discussions were held by the officers of Blauner's concerning the desirability of a long-term lease on the premises at 925 Market Street. Blauner's attorneys and accountants were consulted on the matter as well as its directors. Blauner's directors were, in addition to its officers who were also directors, Harry Blauner (who was chairman of the board), R. Livingston Sullivan, and John J. Sullivan. In order to assure to the Wilbur-Rogers Philadelphia Corporation a long-term occupancy of the store premises and also to avoid criticism by the outside, public *112 stockholders of Blauner's arising from the duality of interests of the officers of Blauner's who were also officers of Sheila, it was decided that it would be best for Blauner's to acquire the premises at 925 Market Street by means of a merger of Sheila into Blauner's. In order to arrive at the basis of converting the shares of Sheila stock into shares of Blauner's stock, an appraisal of the premises at 925 Market Street was made by an independent real estate appraiser in Philadelphia. The value of the premises was fixed by the appraiser at $1,100,000, which was $18,732.29 less than the value at which the premises were carried on the books of Rogers Realty Company. A Joint Plan and Agreement of Merger was agreed upon by the directors of Sheila and the directors of Blauner's on December 9, 1948, and adopted by the common stockholders of the corporations at meetings held on December 27, 1948. Under the terms of the merger agreement, the common stock of Sheila was converted and exchanged for 23,000 shares of new $50 par 5 percent preferred stock and 197,418 shares of common stock of Blauner's (being the equivalent number of shares of common stock of Blauner's to those theretofore owned *113 by Sheila). The pre-existing common stock and $3 cumulative preferred stock of Blauner's remained unchanged. Thus, pursuant to the merger the shareholders of Sheila received 23 shares of new $50 par 5 percent preferred stock and 197,418 shares of common stock of Blauner's in exchange for each share of Sheila common stock which they held. Immediately after the merger of Sheila into Blauner's and subsequently on December 31, 1949, the holders of Blauner's common stock and $50 par 5 percent preferred stock were as follows: After Merger
December 31, 1949
Common
5% Preferred
Common
5% Preferred
Stockholder
Stock
Stock
Stock
Stock
Estate of Ray Blauner
25,665
2,990
25,665
2,990
Sidney H. Blauner
24,545
2,714
21,545
2,714
Lillian Blauner
23,517
2,714
20,517
2,714
Irving Blauner
26,290
3,059
23,290
2,999
Frances Blauner
24,480
2,852
21,480
2,792
Leon Blauner
27,688
3,082
23,788
3,082
Phyllis Blauner
26,540
3,082
21,440
3,082
Estate of Morris Joseph
1,382
161
346
41
Lulu N. Joseph
1,392
161
2,082
240
Harry Blauner
10,965
1,196
Sally Weitz
2,210
253
Justin Blauner
3,746
368
6,746
368
Allan Blauner
3,371
368
6,371
368
Richard Blauner
50
3,050
Lulu Joseph Trust
2,128
2,128
Helene C. Blauner
126
3,126
Myles L. Blauner
25
3,025
Jerry Joseph
66
66
Victor Joseph
22
368
41
Estate of Harry Blauner
10,965
1,196
Sally Weitz Trust
8,210
253
Karen Weitz Trust
120
Total Blauner Family
204,208
23,000
204,208
23,000
Non-Related Stockholders
39,265
39,265
Total Outstanding Shares
243,473
23,000
243,473
23,000
*114 The $50 par 5 percent preferred stock had an aggregate par value of $1,150,000, representing the net assets of Sheila other than Blauner's stock. The Articles of Incorporation of Blauner's, as amended pursuant to the Joint Plan and Agreement of Merger, provide that the $50 par 5 percent preferred stock shall be nonvoting (except in default of dividends) and that the corporation shall set aside from and out of surplus on or before June 15, 1952, and on or before June 15th of each succeeding year as a sinking fund a sum sufficient to redeem at $50 per share three percent of the largest aggregate number of shares of the 5 percent preferred stock at any time outstanding. Blauner's attorney and accountant recommended the issuance of preferred stock as part of the merger rather than additional common stock in order to avoid the dilution of the proportionate interest of the outside, non-family stockholders of Blauner's. From April 18, 1943, the date of Ray Blauner's death, to July 10, 1951, the executors paid funeral expenses and administration expenses, legal fees, and estate and inheritance taxes in a total amount of $24,819.66. The funds used for the payments of these expenses were borrowed *115 by the executors from the beneficiaries of the estate. In order to make final distribution of the estate, the executors required cash out of which to repay the amounts borrowed for funeral and administration expenses and taxes. Accordingly, the petitioner tendered 690 shares of Blauner's 5 percent preferred stock to Blauner's in 1950 for redemption under the sinking fund provisions of such preferred stock. The 690 shares represented three percent of the 23,000 total outstanding shares of the $50 par 5 percent preferred stock. On May 26, 1950, Blauner's acquired 690 shares of its $50 par 5 percent preferred stock from the petitioner at a price of $50 per share. This acquisition was credited toward the amount of the sinking fund required to be set apart on or before June 15, 1952, by the Articles of Incorporation of Blauner's, as amended pursuant to the Joint Plan and Agreement of Merger. Shortly after the redemption, the estate was distributed. For the fiscal year which ended January 31, 1951, the officers of Blauner's were Sidney H. Blauner, president; Irving Blauner, vice-president; Irving Garfinkle, vicepresident; Leon Blauner, secretary and treasurer. The directors of the corporations *116 included all the officers plus R. Livingston Sullivan and John J. Sullivan. On January 31, 1950, and 1951, Blauner's earned surplus was $3,609,329.15, and $3,327,800.39, respectively. However, by reason of certain provisions in an indenture relating to an issue of debentures and because of certain other restrictions in Blauner's Articles of Incorporation relating to preferred stock, substantial portions of the foregoing amounts of earned surplus were not available for dividends on the common stock. No further redemptions of the $50 par 5 percent preferred stock took place until July 22, 1952. However, on May 1, 1950, Blauner's called for redemption all of its outstanding shares of $3 cumulative preferred stock. The following schedule sets forth all acquisitions to date by Blauner's of its $50 par 5 percent preferred stock from the holders thereof. All shares so acquired were cancelled and retired, pursuant to the sinking fund provisions of the Joint Plan and Agreement of Merger. Number
Date
From
of Shares
Price
Total Cost
5/26/50
Petitioner
690
$50.00
$34,500.00
7/22/52
Sidney H. Blauner
100
49.50
4,950.00
7/22/52
Irving Blauner
200
49.50
9,900.00
9/25/52
Sidney H. Blauner
100
49.50
4,950.00
2/27/53
Lulu N. Joseph
30
50.00
1,500.00
3/ 3/53
Irving Blauner
60
50.00
3,000.00
3/ 3/53
Leon Blauner
200
50.00
10,000.00
60/29/53
Sidney H. Blauner
100
49.00
4,900.00
6/29/53
Irving Blauner
100
49.00
4,900.00
6/29/53
Leon Blauner
100
49.00
4,900.00
12/17/53
Victor Joseph
25
50.00
1,250.00
12/17/53
Jerry Joseph
25
50.00
1,250.00
2/ 4/54
Lillian Blauner
135
50.00
6,750.00
2/ 4/54
Phyllis Blauner
135
50.00
6,750.00
2/ 4/54
Frances Blauner
135
50.00
6,750.00
3/ 2/54
Irving Blauner
100
48.00
4,800.00
*117 The total number of shares of preferred stock acquired from each of the stockholders named was as follows: Petitioner
690
Irving Blauner
460
Sidney H. Blauner
300
Leon Blauner
300
Lillian Blauner
135
Phyllis Blauner
135
Frances Blauner
135
Lulu Joseph
30
Victor Joseph
25
Jerry Joseph
25
Dividends declared on stock of Blauner's for the fiscal years ended January 31, 1947, through January 31, 1954, were as follows: $3 Cum. Pfd.
5% Pfd.
Common Stock
Year Ended
Per
Per
Per
Jan. 31
Total
Share
Total
Share
Total
Share
1947
$34,059.75
$3.00
$ 82,308.88
$0.33 3/4
1948
33,121.50
3.00
146,323.80
.60
1949
28,944.00
3.00
195,098.40
.80
1950
26,442.75
*
$57,500.08 [1]
$2.50
304,341.25
1.25
1951
70,150.10 [2]
3.12 1/2
243,473.00
1.00
1952
55,775.02 [3]
2.50
243,473.00
1.00
1953
55,087.50 [3]
2.50
243,473.00
1.00
1954
53,109.37 [3]
2.50
243,473.00
1.00 The market range of Blauner's common stock for each of the calendar years 1947 through 1954 was as follows: High
Low
1947
11 3/4
6 3/4
1948
14 1/2
6 1/2
1949
13 1/2
9
1950
13 1/4
9 3/4
1951
13 1/4
9 5/8
1952
10 3/4
9 3/4
1953
10 1/2
9 1/2
1954
10
7
The *118 approximate number of common stockholders of Blauner's for each of the years 1947 through 1954 was as follows: 1947
315
1948
334
1949
330
1950
324
1951
310
1952
361
1953
352
1954
355
On its 1950 Fiduciary income tax return the petitioner reported the gain from the redemption on May 26, 1950, by Blauner's of 690 shares of its $50 par 5 percent preferred stock as long-term capital gain. The respondent in his deficiency notice determined that the redemption was essentially equivalent to the distribution of a taxable dividend and that the gain therefrom is taxable to the petitioner as ordinary income. The redemption by Blauner's on May 26, 1950, of 690 shares of the $50 par 5 percent preferred stock held by petitioner did not take place at such time and in such manner as to make the redemption in whole or in part essentially equivalent to the distribution of a taxable dividend. Opinion RAUM, Judge: This case once again presents the question whether the redemption of corporate stock under a specific set of facts and circumstances is essentially equivalent to the distribution of a taxable dividend as provided in Section 115(g) of the 1939 Code. [1] By our ultimate finding of fact, we have resolved this question *119 in petitioner's favor. It should be noted at the outset that the redemption in issue took place in 1950. Thus, the attribution rules of stock ownership which were first made applicable to redemptions under the 1954 Code, cf. ; , do not apply to the instant case. This does not mean that we have not given consideration to the fact that the Blauner family as a group was in actual control of the corporation both before and after the redemption of petitioner's stock. It does, however, mean that in determining the net effect of this redemption, *120 there is no authority under the applicable statute for automatically attributing the stock owned directly or indirectly by petitioner's beneficiaries to petitioner. Minus the attribution rules, we think respondent cannot be sustained on the record facts. Prior to the redemption here in issue, petitioner owned 10.54 percent (25,665 shares) of Blauner's outstanding common stock and 13 percent (2,990 shares) of Blauner's $50 par 5 percent preferred stock. Not all of Blauner's common stockholders (some of whom were non-family, public investors) owned preferred stock, and those who owned the $50 par 5 percent preferred stock (all members of the Blauner family) did not hold it in proportion to the common stock which they also owned. Hence, when only petitioner's $50 par 5 percent preferred stock was redeemed in 1950, the redemption was clearly not pro rata among either the common or preferred stockholders. This fact, while by no means conclusive, argues against dividend equivalence. (C.A. 2); The respondent, however, maintains that the redemption of petitioner's preferred stock was merely the first in a series *121 of redemptions by Blauner's which when considered together are not sufficiently disproportionate to remove the case from Section 115(g). We do not find this argument persuasive on the record before us. More than two years elapsed before there were any further redemptions, and there have been no redemptions since 1954. We cannot find on this record that there was any unified plan of redemptions, and even when the subsequent redemptions are examined, no pro rata scheme emerges. Further redemptions were required by the sinking fund provisions which were a part of the $50 par 5 percent preferred stock issue. The redemptions of preferred stock which have taken place since the redemption of petitioner's stock are set forth in our findings. These redemptions were not in fact proportionate to the redemption of petitioner's preferred stock nor to this day have all the holders of this preferred stock had a portion of their stock redeemed. In the alternative respondent argues that Blauner's redemption of 690 shares of preferred stock from petitioner, when viewed in terms of the ultimate benefit to petitioner's beneficiaries, was similar to a pro rata distribution to these beneficiaries. The petitioner, *122 on the other hand, contends that by such an argument the respondent is attempting to apply retroactively the attribution rules of the 1954 Code to this case. We need not pass on this question, for the facts do not support respondent's theory. Under the decedent's will her daughter, Lulu Joseph, was given a two-fifths interest in the estate, which was twice the size of the interest given to each of Lulu's three brothers. Yet, Lulu held the smallest common and preferred stock interest in Blauner's of any of the beneficiaries. Thus, the redemption here in issue obviously did not ultimately result in a pro rata distribution among the petitioner's beneficiaries. In addition, it should be noted that the petitioner together with its beneficiaries did not own all of the outstanding shares of common stock or of the $50 par 5 percent preferred stock of Blauner's, so even when their stock interests are considered jointly, the redemption of only petitioner's stock did not and could not result in a pro rata distribution. Blauner's record of consistently paying substantial dividends is another factor which contributed to our ultimate finding that the redemption in question was not essentially equivalent *123 to a dividend. In the year in issue, 1950, Blauner's paid $1.25 per share on its common stock, when the price of this common at the time ranged from a low of nine and three-quarters to a high of thirteen and one-quarter. The respondent is correct that Blauner's still had in excess of $3,000,000 in earned surplus in 1950. However, a substantial amount of that surplus was restricted by an indenture and by the corporation's Articles of Incorporation and was unavailable for dividend purposes. We have carefully examined all of the arguments advanced by the respondent in support of his determination of dividend equivalence. It is obvious that some record facts are consistent with this determination. However, upon consideration of the entire record, we are satisfied that the net effect of this redemption was not essentially equivalent to the distribution of a taxable dividend. Decision will be entered for the petitioner. Footnotes
*. Entire issue redeemed May 1, 1950. ↩
1. Includes dividends payable 4/1/49, 7/1/49, 10/1/49 and 1/1/50. ↩
2. Includes dividends payable 4/1/50, 7/1/50, 10/1/50, 1/1/51 and 4/1/51. ↩
3. Includes dividends payable 7/1 and 10/1/51-53, and 1/1/ and 4/1/52-54, respectively.↩
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(g) Redemptions Of Stock. - (1) In General. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.↩